**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **DEVON DRIVE LIONVILLE, LP, et al.,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 15-3435** |
| **PARKE BANCORP, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |


**Goldberg, J.**                                                                                   **July 26, 2018**

<u>**MEMORANDUM OPINION**</u>

      This litigation was originally instituted by Plaintiffs, eight limited partnerships and two individuals, against Defendants Parke Bancorp, Inc., Parke Bank, and two of Parke Bank's employees, Vito Pantilione and Ralph Gallo (collectively, "Defendants"). The original Complaint alleged claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C §§ 1961, et seq., in connection with a series of large commercial loans and related transactions. Following two rounds of Motions to Dismiss, only two Plaintiffs presently remain. These Plaintiffs filed a Second Amended Complaint setting forth three RICO claims, as well as state law claims for fraud, conversion, and civil conspiracy. Defendants have moved to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 41(b). For the following reasons, I will grant the Motion on both grounds and dismiss the Second Amended Complaint with prejudice.

## I.     PROCEDURAL HISTORY

      The eight original Plaintiffs—Devon Drive Lionville, LP ("Lionville"), North Charlotte Road Pottstown, LP ("Pottstown"), Main Street Peckville, LP ("Peckville"), Rhoads Avenue

Newtown Square, LP ("Rhoads Avenue"), VG West Chester Pike, LP ("West Chester Pike"), 1301 Phoenix, LP ("Phoenix"), John Shea ("Shea"), and George Spaeder ("Spaeder")—filed this lawsuit against Defendants on June 19, 2015. I dismissed most of the claims without prejudice for failure to state a claim. Devon Drive Lionville, L.P., et al. v. Parke Bancorp, Inc., et al., No. 15-3435, 2016 WL 475816 (E.D. Pa. Dec. 29, 2016). Two of the Plaintiff Partnerships—West Chester Pike and Phoenix—dropped out of the suit, and the remaining Plaintiffs filed an Amended Complaint on January 30, 2017, setting forth six counts: (1) conduct and participation in an enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c); (2) acquisition and maintenance of an interest in and control of an enterprise engaged in a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(b); (3) conspiracy to engage in a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(d); (4) common law fraud; (5) conversion; and (6) civil conspiracy.

On November 27, 2017, I granted in part Defendants' Motion to Dismiss on the grounds of *res judicata* and dismissed all claims brought by Plaintiffs Pottstown, Peckville, Rhoads Avenue, and Shea, but found no *res judicata* bar regarding the claims alleged by Lionville or Spaeder. I also declined to address Defendants' argument that Lionville and Spaeder had failed to properly plead their substantive causes of action, noting that:

> The Amended Complaint sets forth the various causes of action as to all Plaintiffs collectively. As such, it is almost impossible to decipher which specific allegations go to which Plaintiff. Having now dismissed four of the six Plaintiffs, I cannot discern how the absence of these Plaintiffs' claims impacts the validity of the remaining causes of action by the remaining Plaintiffs.

Devon Drive Lionville, LP v. Parke Bancorp, Inc., No. 15-3435, 2017 WL 5668053, at *25 (E.D. Pa. Nov. 27, 2017). Accordingly, I denied the remainder of the Defendants' Motion to Dismiss without prejudice and granted Plaintiffs Lionville and Spaeder leave to file a second amended

pleading, directing that this pleading shall contain "*allegations only relating to themselves and Defendants.*" Id. (emphasis added).

On December 27, 2017, Lionville and Spaeder (collectively, "Plaintiffs") filed their Second Amended Complaint. Defendants, in turn, filed (1) a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 41(b) and 12(b)(6); and (2) a Motion to Take Judicial Notice of Adjudicative Facts.[1]

## II. FACTUAL BACKGROUND

Despite my directive that any amended complaint disentangle Lionville and Spaeder's claims from those of the dismissed Plaintiffs, the Second Amended Complaint at issue is practically identical to the Amended Complaint. Rather than restating the allegations set forth in the Second Amended Complaint, I will incorporate by reference the extensive factual recitation in my Memorandum and Order of December 29, 2016. Devon Drive Lionville, L.P., et al. v. Parke Bancorp, Inc., et al., No. 15-3435, 2016 WL 475816, at *1–7 (E.D. Pa. Dec. 29, 2016). For purposes of clarity, however, I will summarize the allegations in the Second Amended Complaint below.

The Second Amended Complaint alleges—in identical fashion to the First Amended Complaint—that, in 2003, Plaintiff George Spaeder ("Spaeder") and non-party Bruce Earle ("Earle") entered into an oral partnership agreement for the purpose of buying and selling real estate (the "Earle-Spaeder Partnership"). Together, the two men formed four of the partnerships—Lionville, Pottstown, Peckville, and Rhoads Avenue (collectively, "the Partnerships")—that were, at one point, Plaintiffs in this lawsuit. (Sec. Am. Compl. ("SAC") ¶¶ 15–16.) Currently, only Lionville and Spaeder are Plaintiffs. These Partnerships were formed

---

[1]    As I will dismiss the Second Amended Complaint on grounds that do not require reliance on any documents outside the pleadings, I will not address the Motion to Take Judicial Notice.

to purchase, develop, and lease a single Pennsylvania commercial real estate property capable of hosting multiple commercial tenants. Spaeder was principally in charge of managing the day-to-day business of Partnerships, while Earle acted as an independent contractor through his wholly-owned company Rosedon Holding Company Limited Partnership ("Rosedon Holding"). Rosedon Holding took custody of the books and records of these three Partnerships and monitored their finances. (Id. ¶¶ 16–18.)

To finance their operations, three of the Partnerships—Lionville, Pottstown, and Peckville—obtained financing through Defendant Parke Bank ("Parke Bank"). In December 2007, Lionville borrowed $3,098,000 from Parke Bank to finance the purchase and development of vacant ground featuring three commercial "pads." In March 2008, Pottstown borrowed $8,000,000 from Parke Bank to acquire and renovate a shopping center. In May 2008, Peckville borrowed $5,200,000 from Parke Bank to fund the purchase and renovation of an existing shopping center. (Id. ¶¶ 19–21, 26–28.)

By late 2011, Earle's and Spaeder's relationship had deteriorated and their business partnership began to collapse. Around that time, the loans from Parke Bank to the Pottstown and Peckville Partnerships went into default. Spaeder then filed for bankruptcy and, during the ensuing proceedings in July 2013, the Partnerships began to uncover evidence of an "enterprise" among Parke Bank, Vito Pantilione (Officer and Director of Parke Bank), Defendant Ralph Gallo (Senior Vice President and Chief Workout Officer for Parke Bancorp, Inc.), and Earle (collectively, the "BPGE Enterprise"). (Id. ¶¶ 2, 35–37, 41.)

According to the Second Amended Complaint, Parke Bank allegedly participated in the BPGE Enterprise when it utilized the funds available under the loans and/or lines of credit extended to the various independent limited partnership entities as one "piggy bank." This piggy

bank allegedly funded troubled loans to create the appearance of a performing loan. Despite the fact that the Lionville, Pottstown, and Peckville Partnerships were separate legal entities with different assets and ownership, it is alleged that Parke Bank treated these loans as if they were three loans to the same borrower, controlled by Earle, such that their loans could be cross-collateralized by Parke Bank as it saw fit. Parke Bank sent correspondence revealing unauthorized transfers and other allegedly fraudulent activity to Earle. In addition to the individual bank account statements, Parke Bank, acting at Pantilione's and/or Gallo's instruction, compiled and/or emailed to Earle reports that detailed account activity for each of the Parke Bank accounts over which Earle had allegedly usurped control. (Id. ¶¶ 52, 54–65.)

As stated above, aside from two small additions, set forth below, the Second Amended Complaint's 192 paragraphs are identical to the dismissed Amended Complaint.[2] The new allegations and one new claim that vary from the First Amended Complaint are as follows:

First, paragraphs 107–112 of the Second Amended Complaint allege that, in March 2008, Pottstown secured an $8,000,000 loan in connection with its acquisition of the property at 1400 North Charlotte Street, Pottstown, PA. The plan for that property was to completely renovate the existing shopping center using $4,146,000 of earmarked funds and then lease the space. The agreement, which described the total loan budget, permitted Pottstown to pull an additional $1 million from the loan balance contingent on providing additional collateral. When the $1 million was repaid, the collateral was to be released. The additional collateral—two other Pennsylvania properties—was delivered prior to any draw on the funds from the Construction Loan. Even though the collateral was released by the terms of the loan documents, Earle allowed Parke Bank

---

[2] The Second Amended Complaint added several new paragraphs intended to bolster their existing claims, none of which require further discussion here as they are repetitive of other allegations already in the pleading. (Id. ¶¶ 22, 38, 161, 164, 167 (first version on p. 44), 162–63 (second versions on p. 44), 167 (second version on p. 45), 168.)

to take a confessed judgment against the limited partnership that owned the collateral, without raising any defenses. (Id. ¶¶ 88-89, 108–11.)  Importantly, the Second Amended Complaint does not connect these new allegations to any of the claims of the remaining Plaintiffs.

Second, paragraphs 184 to 188 of the Second Amended Complaint set forth a new conversion claim by Spaeder.  In the Amended Complaint, the conversion claim was brought by Lionville, Pottstown, Peckville, and Shea.  In the Second Amended Complaint, Plaintiffs deleted Pottstown and Peckville from the claim and substituted Spaeder's name wherever Shea's name appeared.

## III.    MOTION TO DISMSS UNDER FED. R. CIV. P. 12(b)(6)

### A.    <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); <u>see also</u> <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  <u>Id.</u>

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

Claims of fraud, either standing alone or as predicate acts for a RICO claim, are subject to the heightened requirements of Federal Rule of Civil Procedure 9(b). Warden v. McLelland 288 F.3d 105, 114 n.6 (3d Cir. 2002). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted). Plaintiffs may satisfy this requirement by pleading the "date, time and place" of the alleged fraud or "otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

**B.** **Claims Against Parke Bancorp, Inc.**

Plaintiffs set forth RICO claims against, among others, Parke Bancorp, Inc. ("PBI"), which, according to the Second Amended Complaint, is a corporation that wholly owns

Defendant Parke Bank. (SAC ¶¶ 8–9.) Defendants seek to dismiss all causes of action against PBI.

The Third Circuit has held that "mere ownership of a subsidiary does not justify the imposition of liability on the parent." Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001). While the Third Circuit recognized that it is "theoretically possible for a parent corporation and its subsidiary to be the enterprise" under RICO, "the plaintiff must plead facts which, if assumed to be true, would clearly show that the parent corporation played a role in the racketeering activity which is distinct from the activities of its subsidiary." Lorenz v. CSX Corp., 1 F.3d 1406, 1412 (3d Cir. 1993). "A RICO claim under section 1962(c) is not stated where the subsidiary merely acts on behalf of, or to the benefit of, its parent." Id.

Here, the sole allegation in the Second Amended Complaint regarding the parent company, PBI, is a statement that Parke Bank is a "wholly owned subsidiary" of PBI. (SAC ¶ 9.) Plaintiffs' pleading otherwise contains no facts that could justify any inference that PBI had any involvement in the alleged actions at issue in this case. Plaintiffs do not address this argument, let alone make an effort to identify any misdeeds by PBI. Accordingly, I will grant Defendants' Motion to Dismiss on this ground and dismiss all claims against PBI.

**C.      Standing to Assert RICO Claims**

Counts I to III of the Second Amended Complaint set forth RICO claims against Defendants under 18 U.S.C. § 1962(b), (c), and (d). Defendants move to dismiss all three of these claims on the ground that Plaintiffs do not have standing under RICO.

Apart from the Article III constitutional and prudential standing requirements, plaintiffs seeking recovery under RICO must satisfy additional standing criterion set forth in section 1964(c) of the statute. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000). "In the RICO

setting, standing is conferred upon 'any person injured in his business or property by reason of a violation of section 1962 of this chapter . . . .'" Id. at 482–83 (quoting 18 U.S.C. § 1964(c)). Based on this language, the Third Circuit has read section 1964(c) as requiring a RICO plaintiff to make two related but analytically distinct threshold showings: (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962. Id. at 483. A failure to allege RICO standing is grounds for dismissal under Rule 12(b)(6). Vavro v. Albers, No. 05-321, 2006 WL 2547350, at *20 (W.D. Pa. Aug. 31, 2006).

Here, the only issue is whether Plaintiffs have adequately pled the second requirement. RICO's "by reason of" language requires that the defendant's RICO violation be the proximate cause of the plaintiff's injury. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); Holmes v. Secs. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992). The plaintiff must therefore allege "some direct relation between the injury asserted and the injurious conduct alleged." Holmes, 503 U.S. at 268. A showing only that the RICO violation was a "but for" cause of the injury will not suffice for RICO standing. Id.; Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007).

In cases involving RICO claims premised on mail and wire fraud, the law is somewhat unsettled as to whether the "proximate cause" element of standing requires a plaintiff to plead some form of reliance on the alleged mail and wire fraud. The United States Supreme Court, in Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008), expressly held that first-party reliance—i.e., reliance by the plaintiff on a fraudulent wire or mailing—is not an element of a civil RICO claim premised on mail fraud. Id. at 641–42. In so ruling, the Court also rejected the contention that proof of first-party reliance is necessary to establish proximate causation. Id.

The Court stated that "first-party reliance [is not] necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy . . . proximate-cause principles." Id. at 657–58.

The Supreme Court, however, was less clear on whether some other type of reliance allegation remained crucial to RICO standing. In Bridge, the Court remarked that "[o]f course, none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied upon the defendant's misrepresentations." Id. at 658 (emphasis in original). "In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation. . . . Accordingly, it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation." Id.

This latter language has left open for debate whether a RICO plaintiff alleging mail and wire fraud must plead at least third-party reliance in order to establish standing. The Third Circuit has yet to weigh in on this issue. Walter, 480 F. Supp. 2d at 806 (noting the lack of guidance from the Third Circuit). "However, numerous cases from this district have held that reliance upon a material representation is required because '[i]t is a matter of basic logic that a misrepresentation cannot cause, much less proximately cause, injury, unless someone relies upon it.'" Lynch v. Capital One Bank (USA), N.A., No. 12-992, 2013 WL 2915734, at *3 (E.D. Pa. 2013) (quoting Central Transp., LLC v. Atlas Towing, Inc., 884 F. Supp. 2d 207, 215–16 (E.D. Pa. 2012)); see also Stoneback v. ArtsQuest, Civ. A. No. 12–3287, 2013 WL 3090714, at *15 (E.D. Pa. June 20, 2013) (denying civil RICO class certification because establishing proximate cause required individualized showings that "*someone* relied on the defendant's misrepresentations"); Coleman v. Commonwealth Land Title Ins. Co., 318 F.R.D. 275, 288 (E.D.

Pa. 2016) ("A demonstration of some form of reliance, whether first- or third-party, is necessary to establish causation, linking the prohibited racketeering activity to the alleged injury."); Checker CAB Phila., Inc. v. Uber Techs., Inc., No. 14-7265, 2016 WL 950934, at *9 (E.D. Pa. Mar. 7, 2016) ("To establish a RICO violation premised on mail or wire fraud (as Plaintiffs' claims are here), the plaintiff must also allege facts to show reliance on the defendant's alleged misrepresentations."), aff'd, 689 F. App'x 707 (3d Cir. 2017); District 1199P Health & Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 525 (D.N.J. 2011) ("[W]ithout sufficient allegations of direct reliance, Plaintiffs have not properly alleged that Defendants' misrepresentations were the 'but for' cause of their injuries."); see also In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 119 (2d Cir. 2013) (holding, in the context of the predicate acts of mail and wire fraud, "'proof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half of the equation' . . . because plaintiffs must also demonstrate reliance on a defendant's common misrepresentation to establish causation under RICO.") (internal quotations omitted).[3]

A majority of the district courts within this Circuit have concluded that "some form of reliance on the defendant's misrepresentation is necessary to properly establish proximate cause for a RICO violation based on mail or wire fraud." Lynch, 2013 WL 2915734, at *3. I also find this line of reasoning persuasive.

Here, the Second Amended Complaint lists a number of allegedly fraudulent communications occurring through the mail or interstate wire system. Notably, however, all of these communications occurred solely, and secretly, between Defendant Parke Bank and third-

---

[3]   But see Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc., No. 16-1343, 2016 WL 8256412, at *10 (E.D. Pa. Sept. 16, 2016) ("While the Supreme Court acknowledged 'it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation,' the Court did not hold that it was a requirement for doing so, particularly at the pleading stage.")

party Bruce Earle, who is part of the alleged RICO enterprise. The pleading at issue specifically references:

- Correspondence from Defendant Parke Bank concerning the loans to the Lionville, Pottstown, and Peckville partnerships was sent only to the offices of Rosedon Holding, an entity controlled entirely by alleged co-conspirator Bruce Earle. (Sec. Am. Compl. ¶¶ 54–59.)

- Correspondence from Parke Bank revealing unauthorized transfers and other allegedly fraudulent activity to Earle, including periodic loan account statements generated by Parke Bank for each account held by the Plaintiff partnerships, as well as reports that detailed account activity for each of the Parke Bank accounts over which Earle had allegedly usurped control. (Id. ¶¶ 60–65.)

- Parke Bank's facilitation of funds transfers from Lionville's account to Rosedon Holding without Lionville's authorization. These payments were directed by mail, email, and/or online access to Rosedon Holding at Earle's request. (Id. ¶¶ 69–74.)

- Parke Bank's assessment of Lionville's account with an allegedly fraudulent "late charge" which was later waived. Lionville never received notice of the assessment of these late charges. (Id. ¶¶ 84–86.)

None of the communications which form the basis of the mail or wire fraud claims were directed towards Plaintiffs. Quite to the contrary, Plaintiffs explicitly assert that they never received any of the alleged fraudulent mailings or wires and that Parke Bank's use of the mails to send account statements reflecting unauthorized transactions was directed "to Earle only" so as to conceal the activities of the BPGE Enterprise. (SAC ¶¶ 59, 60, 61, 64, 70, 78, 81, 85, 91, 94, 117, 128, 159(a)(b)(e).) Thus, Plaintiffs have not alleged first-party reliance.

Moreover, nothing in the Second Amended Complaint demonstrates any reliance on the alleged mail and wire fraud by any third-party outside the RICO enterprise. The unauthorized wire transfers of funds and mailing of fraudulent bank statements were all made by Parke Bank, purportedly at the direction of Pantilione and Gallo, to Rosedon Holdings, which was controlled entirely by alleged co-conspirator Bruce Earle. (SAC ¶¶ 70–72, 78–81 90–92, 116–18.) The Second Amended Complaint repeatedly emphasizes that all fraudulent use of the mails and wires

was intra-enterprise, with no communications sent to third parties. (SAC ¶¶ 59–62, 64–66, 70–72, 81, 90–92, 116–18.) Plaintiffs' pleading is devoid of any allegation that any party outside the purported conspiracy was aware of the transfers, let alone that an outside party relied upon them.

In their response to Defendants' Motion, Plaintiffs make no effort to identify any reliance by anyone outside the alleged enterprise.[4] Rather, Plaintiffs argue that, under <u>Bridge</u>, first-party reliance is not required. But Plaintiffs do not address the great weight of authority requiring at least some form of reliance on the alleged mail and wire communications. Absent a demonstration of reliance, whether first-party or third-party, Plaintiffs cannot establish that the wires/mailings referenced in the Second Amended Complaint proximately caused Plaintiffs' injuries. As such, I conclude that the proximate cause element of RICO standing has not been satisfied.[5]

### D.    <u>Remaining State Law Claims</u>

Having dismissed all federal causes of action upon which the Court's jurisdiction is based, I must now determine whether to retain supplemental jurisdiction over the remaining state law claims.

Under 28 U.S.C. § 1367, "a district court has authority to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claim." <u>De Asencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 308 (3d Cir. 2003). "The purpose of supplemental jurisdiction is to promote convenience and efficient judicial administration." <u>Resnick v. Lower Burrell Police Dept.</u>, No. 09-893, 2010 WL 88816, at *3 (W.D. Pa. Jan. 8,

---

[4]  Plaintiffs incorporated by reference their Response to Defendants' Motion to Dismiss the Amended Complaint.

[5]  Because I will dismiss the RICO claims on standing grounds, I need not address Defendants' other Rule 12(b)(6) arguments.

2010).  When the district court dismisses all of the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).  "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).  In order to determine whether supplemental state law claims should be dismissed when the federal law claims have been eliminated before trial, the court must consider the balance of factors including judicial economy, convenience, fairness, and comity.  Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Although neither party in this case has addressed the foregoing factors, I find that the balance of such factors advocates against the exercise of supplemental jurisdiction. This case remains at the most preliminary stages of litigation with Defendants having yet to even file an answer.  I have heard no other motions other than motions to dismiss, held no status conferences, and entered no scheduling order.  Moreover, the sole claims remaining are common law fraud, conversion, and civil conspiracy, which the Pennsylvania courts are better suited to address, particularly in the absence of any federal issue or other independent basis for federal jurisdiction. See Carnegie-Mellon, 484 U.S. at 351 ("[w]hen the single federal-law claim in the action [is] eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction.").  Therefore, I decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss them without prejudice to Plaintiffs' right to refile them in state court.

## IV.    MOTION TO DISMISS UNDER FED. R. CIV. P. 41(b)

Notwithstanding my ruling under Federal Rule of Civil Procedure 12(b)(6), I find that the Second Amended Complaint is also subject to dismissal under Federal Rule of Civil Procedure 41(b).

In my prior Memorandum Opinion granting in part the Motion to Dismiss the Amended Complaint, I declined to consider Defendants' arguments regarding the merits of the remaining Plaintiffs' RICO and common law claims because it was difficult to determine how the dismissal of four Plaintiffs impacted the validity of the remaining causes of action.  <u>Devon Drive Lionville</u>, 2017 WL 5668053, at *25.   Consequently, I ordered the remaining Plaintiffs (Lionville and Spaeder) to "either (1) file a Second Amended Complaint containing allegations only relating to themselves and Defendants, or (2) state that they will not pursue any further claims against Defendants."  <u>Id.</u>

Despite these clear directives, Plaintiffs filed the identical complaint with the addition of some new claims, which included facts regarding an additional loan and a conversion claim by Plaintiff Spaeder.  In other words, instead of paring down the existing 184-paragraph Amended Complaint to reflect the dismissal of four of the six Plaintiffs, Plaintiffs submitted a 192-paragraph Second Amended Complaint that again included allegations involving all six Plaintiffs.  Defendants now claim that Rule 41(b) supports dismissal of the Second Amended Complaint with prejudice.

Federal Rule of Civil Procedure 41(b) provides:

> **(b) Involuntary Dismissal; Effect.**   If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one

> for lack of jurisdiction, improper venue, or failure to join a party
> under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

The United States Court of Appeals for the Third Circuit has recognized that "[d]istrict court judges, confronted with litigants who flagrantly violate or ignore court orders, often have no appropriate or efficacious recourse other than dismissal of the complaint with prejudice." Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992). To determine the propriety of punitive dismissals, the Third Circuit, in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984), has outlined a series of factors to be considered. The six Poulis factors include:

> (1) the extent of the party's personal responsibility; (2) the
> prejudice to the adversary caused by the failure to meet scheduling
> orders and respond to discovery; (3) a history of dilatoriness; (4)
> whether the conduct of the party or the attorney was willful or in
> bad faith; (5) the effectiveness of sanctions other than dismissal,
> which entails an analysis of alternative sanctions; and (6) the
> meritoriousness of the claim or defense.

747 F.2d at 868. Although "[d]ismissal is a harsh remedy and should be resorted to only in extreme cases," Marshall v. Sielaff, 492 F.2d 917, 918 (3d Cir. 1974), not all of the Poulis factors need be satisfied in order to dismiss a complaint." Mindek, 964 F.2d at 1372. Indeed, there is no "magic formula" or "mechanical calculation" with regard to Poulis analysis. Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) (quoting Mindek, 964 F.2d at 1372). Instead, the decision should be made "in the context of the district court's extended contact with the litigant." Mindek, 964 F.2d at 1372.

With these principles in mind, I consider the Poulis factors in the context of this case.[6]

---

[6] Defendants assert that application of the Poulis factors is unnecessary in circumstances where the plaintiff fails to file an amended complaint in accordance with a court order, as the "litigant's conduct makes adjudication of the case impossible." Azubuko v. Bell Nat'l Org., 243 F. App'x 728, 729 (3d Cir. 2007) (citing Guyer v. Beard, 907 F.2d 1424, 1429–30 (3d Cir. 1990)).

## A. **Personal Responsibility**

"The first <u>Poulis</u> factor is an inquiry into the noncompliant party's personal responsibility." <u>In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.</u>, 319 F.R.D. 480, 485 (E.D. Pa. 2017). The United States Supreme Court has emphasized that the mere fact that a party is represented by counsel whose conduct was dilatory does not preclude dismissal of a case under Rule 41(b):

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposed an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

<u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 633–34 (1962) (quotations omitted). Nonetheless, the first <u>Poulis</u> factor focuses more closely on whether the party himself has failed to comply with the court's orders as opposed to whether counsel for the party is responsible. <u>Briscoe</u>, 538 F.3d at 258-59; <u>Vittas v. Brooks Bros. Inc., Grp.</u>, No. 14-3617, 2017 WL 6316633, at *2 (D.N.J. Dec. 11, 2017). Thus, where the party's attorney is largely responsible for the misconduct, the Third Circuit has "increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." <u>Carter v. Albert Einstein Med. Ctr.</u>, 804 F.2d 805, 807 (3d Cir. 1986).

---

<u>Azubko</u>, however, involved a situation where the original complaint was dismissed and, notwithstanding the court's order, the plaintiff failed to file an amended complaint. Under those circumstances, adjudication of the case was impossible because there was no operative complaint, meaning balancing of the <u>Poulis</u> factors was unnecessary. <u>Id.</u> at 729. Here, Plaintiffs have filed a Second Amended Complaint, albeit one that does not comply with the Court's Order. Given these circumstances, I will engage in a <u>Poulis</u> balancing test.

Here, Plaintiffs' response to the Rule 41(b) motion does not attempt to disclaim Plaintiffs' responsibility for counsel's actions. Defendants, however, present no evidence that Plaintiffs were personally responsible for the Second Amended Complaint's noncompliance with the Court Order. As I cannot determine responsibility, I find the first <u>Poulis</u> factor neutral.

### B. <u>Prejudice to the Adversary</u>

Under the second <u>Poulis</u> factor, "[e]vidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal quotation marks and citation omitted). Prejudice is not limited to "irremediable" or "irreparable" harm. <u>Briscoe</u>, 538 F.3d at 259; <u>see also</u> <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir. 2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693–94 (3d Cir. 1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222.

Here, Plaintiffs' disregard of my Order granting them a third opportunity to properly plead their claims precluded the advancement of this litigation. It is worth repeating the procedural history of this case. Plaintiffs originally filed this lawsuit against Defendants on June 19, 2015. I dismissed most of the claims without prejudice for failure to state a claim, and granted Plaintiffs leave to amend their Complaint. Six of the original eight Plaintiffs then filed an Amended Complaint on January 30, 2017. I dismissed claims by four of the Plaintiffs based on the doctrine *res judicata*. <u>Devon Drive Lionville</u>, 2017 WL 5668053. Plaintiffs are now on their third iteration of the Complaint and, despite my clear directive that they pare down the remaining allegations to clearly reflect the basis of liability for the remaining RICO violations, Plaintiffs submitted an even more unwieldy pleading that mostly mirrors the prior pleading. As a

result, Defendants cannot decipher the claims against them and have been forced to re-raise arguments previously submitted in connection with their Motion to Dismiss the Amended Complaint. As the Court reviewing the pleading, I have the same dilemma. Because Plaintiffs' actions "frustrate[] and delay[] the resolution of this action," I find that the second Poulis factor weighs in favor of dismissal. Metro Metals USA v. All-State Diversified Prod., Inc., No. 12-1448, 2013 WL 1786593, at *2 (D.N.J. Apr. 25, 2013).

### C.    History of Dilatoriness

The third Poulis factor looks at the Plaintiffs' history of dilatoriness. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Chiarulli v. Taylor, No. 08-4400, 2010 WL 1371944, at *3 (D.N.J. Mar. 31, 2010) (quoting Adams, 29 F.3d at 874).

Although Defendants argue that Plaintiffs' conduct with respect to the filing of the Second Amended Complaint demonstrates their dilatoriness, the third Poulis factor is more concerned with the *history* of dilatoriness. "[C]onduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe, 538 F.3d at 261 (quotations omitted). As Defendants have not identified any other instances of noncompliance with Court orders, or any other conduct amounting to dilatoriness, I find that this factor weighs against dismissal.

### D.    Willfulness or Bad Faith

Under the fourth factor, the Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." Adams, 29 F.3d at 875 (internal quotation marks and citation omitted). Generally, "[w]illfulness involves

intentional or self-serving behavior." Id. "If the conduct is merely negligent or inadvertent, we will not call the conduct 'contumacious.'" Briscoe, 538 F.3d at 262; see Poulis, 747 F.2d at 868–69 (finding that plaintiff's counsel's behavior was not contumacious because, although he had missed deadlines, there was no suggestion that his delays were for any reason other than his and his wife's poor health); see also Emerson v. Thiel Coll., 296 F.3d 184, 191 (3d Cir. 2002) (finding bad faith because the conduct went beyond mere negligence).

Plaintiffs made no effort to comply with my order that they file a Second Amended Complaint relating only to themselves and Defendants. Instead, they filed an almost verbatim copy of the Amended Complaint, and in self-serving fashion, justify this non-compliance arguing it was "necessary" and "crucial":

> Of course, in order to provide the necessary facts and background to support Plaintiffs' causes of action, Plaintiffs had to provide the facts relating to the Defendants['] conduct for all Partnerships. This is complex litigation with causes of action based on Defendants['] egregious violations of the RICO Act, fraud, conversion and conspiracy. All of the allegations set forth in the Second Amended Complaint are crucial to establish the conduct and pattern of behavior exhibited by the Defendants.[7]

(Pls.' Opp'n Mot. to Dismiss p. 16.) Despite my unambiguous statements that (a) the Amended Complaint contained numerous irrelevant allegations; (b) I could not clearly analyze the merits of their Amended Complaint in its existing format; and (c) Plaintiffs must replead the

---

[7] Plaintiffs' claim that all the facts in the Second Amended Complaint are crucial to establish a pattern of misconduct is disingenuous. By way of example, Plaintiff Shea was previously dismissed from this case and his claims have no bearing on injury suffered by any of the Plaintiff Partnerships or Plaintiff Spaeder. Yet, the Second Amended Complaint contains at least fourteen paragraphs exclusively relating to Shea. Moreover, although Plaintiff Peckville was dismissed from this case, the Second Amended Complaint contains at least sixteen paragraphs discussing the alleged unauthorized wire transfers, payment of unsigned/forged checks, assessment of fraudulent late charges, and unilateral modification of loan terms relating solely to Peckville's account.

allegations, Plaintiffs nonetheless decided that they would disregard my Order. Plaintiffs' willful failure to comply with my Order weighs in favor of dismissal.

### E. Effectiveness of Sanctions Other Than Dismissal

The fifth Poulis factor considers whether alternative sanctions would be more effective than dismissal. Generally, a district court "should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits[,]" see Titus v. Mercedes Benz of North Am., 695 F.2d 746, 749 (3d Cir.1982), and therefore "must consider the availability of sanctions alternative to dismissal." Briscoe, 538 F.3d at 262 (citing Poulis, 747 F.2d at 869). The Third Circuit has recognized that alternative sanctions "include a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, the temporary suspension of the culpable counsel from practice before the court, . . . dismissal of the suit unless new counsel is secured[,] . . . the preclusion of claims or defenses, or the imposition of fees and costs upon plaintiff's counsel under 28 U.S.C. § 1927." Titus, 695 F.2d at 749 n.6.

Two cases from this district with similar procedural backgrounds have deemed dismissal warranted under this factor. In Morris v. Kesserling, No. 09-1739, 2011 WL 1752828 (M.D. Pa. May 9, 2011), aff'd, 514 F. App'x 233 (3d Cir. 2013), the court dismissed the plaintiffs' amended complaint because it contained "sweeping statements and generalized allegations" that failed to provide the necessary details. Id. at *1. The court had ordered the plaintiffs to file a new complaint that "provide[d] factual information corresponding to the allegations of the amended complaint." Id. But, the plaintiffs' counsel "refused to heed" the court's directives and submitted a second amended complaint "whose factual allegations [were] essentially identical to those of the [a]mended [c]omplaint." Id. Considering the Poulis factors, the court found that because "Plaintiffs' scornful refusal to abide by the clear and reasonable Order of the Court is a

direct affront to the judicial process," there was "no sanction short of dismissal" which was appropriate. Id. at *3.

Similarly, in <u>Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh</u>, No. 09-1548, 2011 WL 2637481 (W.D. Pa. July 6, 2011), the court dismissed plaintiff's original complaint alleging age, sex, national origin, and race discrimination, and granted leave to file an amended complaint only with respect to her claims of race discrimination and retaliation under 42 U.S.C. § 1981. Id. at *1. Plaintiff filed an amended complaint which realleged all fourteen previously dismissed claims. Id. The court struck the amended complaint for failure to comply with the prior order and directed plaintiff to file a conforming second amended complaint. Plaintiff, proceeding *pro se*, failed to file a second amended complaint and defendants moved to dismiss. Id. The court found, under the <u>Poulis</u> factors, that dismissal was warranted. Id.

Here, Plaintiffs offer no persuasive reason to convince me that any other sanction other than dismissal will remedy the continuing pleading problem. Plaintiffs were clearly advised that the Amended Complaint, in its current form, did not permit clear adjudication of Defendants' remaining 12(b)(6) challenges. Plaintiffs' noncompliance makes adjudication of the case impossible. Other than allowing Plaintiffs yet another opportunity to provide a complaint that conforms to my Order, I cannot discern, and Plaintiffs have not suggested, any alternative sanction.

## F.     <u>Meritoriousness of Claim or Defense</u>

The standard of meritoriousness when reviewing a dismissal is not stringent:

> [W]e do not purport to use summary judgment standards. A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.

<u>Poulis</u>, 747 F.2d at 869–870.

This factor weighs in favor of dismissal here. As set out above, and incorporated here into my <u>Poulis</u> analysis, Plaintiffs have not properly alleged the necessary reliance to maintain standing to pursue their RICO claims. (<u>See</u> pp. 8–13, <u>infra</u>.) Therefore, I find that this factor weighs in favor of dismissal.

### G. Conclusion as to Rule 41(b) Motion

"The final step in the <u>Poulis</u> analysis is to weigh and consider all the above factors to determine if dismissal is warranted." <u>Stafford v. Derose</u>, No. 09-346, 2015 WL 1499833, at *5 (M.D. Pa. Apr. 1, 2015). The second, fourth, fifth, and sixth factors weigh significantly in favor of dismissal, while the third factor leans against dismissal, and the first factor appears to be neutral. As the weight of these factors strongly supports dismissal of the action, I will dismiss this case with prejudice under Federal Rule of Civil Procedure 41(b).

## V. CONCLUSION

For the foregoing reasons, I conclude that Plaintiff has not adequately pled a claim against Defendant Parke Bancorp, Inc., and has not alleged any form of reliance sufficient to adequately plead standing for a RICO claim premised on mail or wire fraud against the remaining three defendants. Because the only remaining claims are brought under state law, and because factors of judicial economy, convenience, fairness, and comity weigh against my exercise of supplemental jurisdiction, I dismiss the Second Amended Complaint without prejudice to Plaintiffs' re-filing of their common law claims in state court. Alternatively, I also find that Plaintiffs' willful refusal to comply with my prior Order when filing their Second Amended Complaint warrants dismissal under Federal Rule of Civil Procedure 41(b).